IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| **LISA ROBBINS**, | : | Case No. 1:06cv278 |
| | : | |
| Plaintiff, | : | District Judge Susan J. Dlott |
| | : | |
| v. | : | ORDER GRANTING IN PART AND |
| | : | DENYING IN PART MOTION FOR |
| **WXIX RAYCOM MEDIA**, | : | SUMMARY JUDGMENT |
| | : | |
| Defendant. | : | |

This matter is before the Court on Defendant Raycom Media/Fox 19 Television's Motion

for Summary Judgment.  (Doc. 25.)  Lisa Robbins brought this action for disability

discrimination in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101,

and Ohio Rev. Code § 4112.02(A) against her former employer, Raycom Media/Fox 19

Television ("Raycom").  Robbins also asserts retaliation in violation of Ohio Rev. Code §

4112.02(I) and 42 U.S.C. § 12203(a).  Defendant has moved for summary judgment on each of

Robbins' claims.  For the following reasons, Defendant's Motion is GRANTED as to Robbins'

retaliation claim under the ADA and DENIED as to all other claims.

**BACKGROUND**[1]

At the end of September 2004, Lisa Robbins was diagnosed with Type II diabetes.  At the

time of her diagnosis, Robbins was working as Traffic Manager at Raycom's WXIX Channel 19

---

[1] Except as otherwise indicated, background facts are from Defendant's Proposed
Undisputed Facts (doc. 28-2) to the extent they are admitted by Plaintiff in Plaintiff's Amended
Response to Proposed Undisputed Facts (doc. 37).

Television Station ("WXIX" or "the Station"), where she had been employed for twenty-two

years.  As Traffic Manager, Robbins oversaw a staff of four in the Traffic Department, which is

in charge of ensuring that commercials air at the correct times.  Robbins reported to a General

Sales Manager ("GSM"), who reported to the station's General Manager ("GM").

Prior to Robbins' diagnosis, in late August 2004, Tom Long was hired as the Station's

GSM.  During Robbins' introductory meeting with Tom Long on September 14, 2004, she

expressed that she was working long hours, was stressed, and had an elevated blood pressure.

Tom Long had already discussed Robbins' hours with WXIX GM John Long.  Specifically, John

Long had given Tom Long a "heads up" about Robbins' "peculiar work hours," namely,

"coming in at 10:30, eleven o'clock in the morning and then go [sic] home late in the evening."

(Long Dep. 39:13-40:3.)[2]

Approximately two weeks later, soon after being diagnosed with diabetes, Robbins again

met with Tom Long, this time informing him of her diagnosis.  During this meeting, she gave

Tom Long a list of her duties and asked him to review the list to determine whether some duties

---

[2]  Robbins asserts that she arrived at work earlier than represented by John Long; that on most days she arrived at work anywhere from 9:15 to 10:00 a.m.  (Robbins Dep. 157:14-158:9.) Because Robbins was a salaried and not an hourly employee, there is no log of the hours Robbins actually worked.

could be eliminated or given to other employees, like the sales assistants, so that she could

reduce her hours.  (Robbins Dep. 177:23-179:1.)  Tom Long said that he would look over the list

and get back to her.  (*Id*. at 179:2-5.)  Long did not ask Robbins any questions about her

diagnosis or her request to review her job duties.  (Robbins Decl., doc. 34-2 ¶ 4.)

Over the next several months, Robbins continued to meet periodically with Tom Long.

In December 2004, Robbins told him that her blood pressure was up and that she needed to work

fewer hours.  She asked Long about the list of duties she had asked him to review, and he said he

had not had time to review it but that he would get back to her.  (Robbins Dep. 182:17-183:12.)

Robbins was granted a week of medical leave for treatment related to a retinal occlusion in early

January 2005.  When she returned to work in mid-January, she gave Tom Long a note that her

doctor had written in December.  The note explained that Robbins should reduce her work week

to forty-five to fifty hours and that she needed to be able to eat meals on a regular schedule,

check her blood sugars, and exercise.  At that time, Robbins once again asked Tom Long

whether he had reviewed the list of her job duties, and he said that he had not.  Robbins asked

him to please look at it because she couldn't continue to work the hours she had been working.

(*Id*. at 190:18-21.)

John Long, WXIX GM, testified to receiving a copy of the letter from Robbins' doctor. However, he did not discuss it with anyone and deemed the forty-five to fifty-hour work week request as a "non-issue" because he believed Robbins should have been performing her job in forty-five to fifty hours per week anyway.  (Long Dep. 87:8-88:24.)

In late February 2005, Robbins met with Tom Long to tell him she needed time off of work for two surgeries.  She again asked him about the list of duties she had asked him to review for the purpose of shifting some of her duties to other employees.  (Robbins Dep. 207:14-19.) Again, Long said he had not had time to review it.  (*Id*. at 208:14-17.)  Rather than shift duties away from Robbins, Tom Long gave her additional work, including a "to do" list pertaining to changes to the department's computer software.  Tom Long gave Robbins another, different "to do" list on March 28, 2005 with instructions that the items be completed by March 31.  Robbins told Tom Long she needed to consult a GSM at another station about some of the items on the second list, but Long told her she could not and would be in trouble if she did.  (*Id*. at 218:2-219:16.)  At this point, Robbins "just lost it" and slipped a resignation letter under Tom Long's door on April 4, 2005.

Robbins contends that being diagnosed with diabetes has changed her daily life. (Robbins Decl., doc. 34-2 ¶ 7.)  She has to check her blood sugar level after meals, which must

be eaten on a regular schedule. (*Id.* ¶¶ 8, 9.) According to Raycom, Robbins was free to eat

when she chose because she could keep food in her office to consume throughout the day, and no

one told her she could not take regular meal breaks. (Robbins Dep. at 202:10-205:21.)

Robbins, however, explains that she could not have a set schedule for lunch or dinner because

she was often unexpectedly called into meetings. (Robbins Decl., doc. 34-2 ¶ 12.) Though it is

agreed that none of the managers told Robbins she could not leave the building at a given hour,

(Robbins Dep. 192:3-21), Robbins believed she could not leave because she was swamped and

had certain tasks that had to be done. (*Id.* at 192:22-193:42; Robbins Decl., doc. 34-2 ¶ 3.)

At the time of her resignation, Robbins had twenty-five paid sick days available that she had not

used because she was too busy to take the days off. (Robbins Dep. 191:5-10.) On September

26, 2005, Robbins filed a charge with the Equal Employment Opportunity Commission (EEOC)

alleging discrimination on the basis of disability. She brought this lawsuit against Raycom on

May 9, 2006.

**LEGAL STANDARD**

Summary judgment is appropriate if no genuine issue of material fact exists and the

moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c). On a motion

for summary judgment, the movant has the burden of showing that no genuine issues of material

fact are in dispute, and the evidence, together with all inferences that can permissibly be drawn

therefrom, must be read in the light most favorable to the party opposing the motion. *See*

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-87 (1986). The moving party may support the motion for summary judgment with affidavits or other proof or by exposing the lack of evidence on an issue for which the nonmoving party will bear the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

In responding to a summary judgment motion, the nonmoving party may not rest upon the pleadings but must go beyond the pleadings and "present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986). The nonmoving party "must set forth specific facts showing there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The task of the Court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Liberty Lobby*, 477 U.S. at 249. A genuine issue for trial exists when the evidence is not "so one-sided that one party must prevail as a matter of law." *Id.* at 252.

**ANALYSIS**

**I.      Disability Discrimination**

Robbins alleges that she was a disabled employee within the meaning of the ADA and the Ohio Revised Code and that Raycom failed to accommodate her by refusing to explore reasonable accommodations to her job duties, including transferring non-essential functions to other employees. Robbins claims that her physical impairment, Type II diabetes, substantially limits her in the major life activity of eating. Raycom denies the claim and asserts that the undisputed facts demonstrate that Robbins was not disabled as a matter of law.[3]

---

[3] There are five elements of a prima facie case of discrimination under the ADA:  the plaintiff must show (1) that she is disabled; (2) that she is otherwise qualified for the position, with or without reasonable accommodation; (3) that she suffered an adverse employment decision; (4) that the employer knew or had reason to know of the employee's disability; and (5)

6

The Ohio and federal anti-discrimination statutes contain similar prohibitions against disability discrimination, and Ohio courts rely on interpretations of the ADA as persuasive authority in interpreting Ohio's disability discrimination law. *Columbus Civ. Serv. Comm. v. McGlone*, 697 N.E.2d 204, 206-7, 82 Ohio St. 3d 569, 573 (Ohio 1998). Thus, the Court will proceed to analyze Robbins' disability discrimination claims under the ADA.

The ADA requires covered entities to provide "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an . . . employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship." 42 U.S.C. § 12112(b)(5)(A). The Act defines a "qualified individual" as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds." 42 U.S.C. § 12111(8).

### A. Disability

Under the ADA, a "disability" is "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an

---

that she was replaced or the position remained open while the employer looked for other applicants. *Plant v. Morton Intern., Inc.*, 212 F.3d 929, 936 (6th Cir. 2000).

"On a motion for summary judgment, the movant has an initial burden of showing 'the absence of a genuine issue of material fact.'" *Jones v. Kimberly-Clark Corp.*, No. 99-6280, 2000 WL 1800475, at *2 (6th Cir. Nov. 28, 2000) (quoting *Celotex*, 477 U.S. at 323). With respect to the discrimination claim, Raycom's motion seeks to demonstrate the absence of a genuine issue of material fact only as to whether Robbins was disabled. (See doc. 25 at 6-9; doc. 40 at 3-11.) Thus, for the purposes of summary judgment only, the Court finds that Raycom has conceded that a genuine issue of material fact remains as to the other elements of Robbins' prima facie case of disability discrimination.

7

impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2).[4]

EEOC regulations interpreting the ADA define "substantially limits" as:

> (i) Unable to perform a major life activity that the average person in the general population can perform; or
> (ii) Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.

29 C.F.R. § 1630.2(j)(1) (2001). The following factors should be considered in determining whether an individual is substantially limited in a major life activity: (1) the nature and severity of the impairment; (2) the duration or expected duration of the impairment; and (3) the permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment. 29 C.F.R. § 1630.2(j)(2)(i)-(iii). While substantial limitations should be considerable, they also should not be equated with "utter inabilities." *Bragdon v. Abbott*, 524 U.S. 624, 641 (1998).

Raycom does not dispute that Robbins' Type II diabetes constitutes a "physical impairment" within the meaning of the ADA, nor does it dispute that eating is a major life activity.[5] However, it contends that Robbins' diabetes does not "substantially limit" her eating.

---

[4] Ohio Revised Code § 4112.01(A)(13) defines a disability as "a physical or mental impairment that substantially limits one or more major life activities . . .; a record of a physical or mental impairment; or being regarded as having a physical or mental impairment." Because there is no material distinction between the ADA's and the Ohio Rev. Code's definition of disability for the purposes of this case, the Court will refer to the ADA's definition.

[5] Raycom does not dispute, and thus the Court assumes for the purpose of this motion, that eating is a major life activity. The Sixth Circuit has not considered whether eating is a major life activity under the ADA, but district courts within the circuit have so concluded, as have the Second and Seventh Circuit Courts of Appeals. *See*, *e.g.*, *Downs v. AOL Time Warner, Inc.*, No. 2:03-cv-1117, 2006 WL 162563 (S.D. Ohio Jan. 20, 2006); *Hodge v. Henry County Med. Ctr.*, 341 F. Supp. 2d 968, 973 (W.D. Tenn. 2003); *Forest City Daly Hous., Inc. v. Town of*

8

The term "substantially limit[ed]" is to be "interpreted strictly to create a demanding standard for qualifying as disabled." *Toyota Motor Mfg., Kentucky, Inc. v. Williams*, 534 U.S. 184, 197 (2002). Thus, the mere diagnosis of diabetes in itself is insufficient to prove disability status. *Id.* at 198. Rather, an individual with diabetes must present evidence of the extent of the limitations caused by their impairment in terms of his or her own experience: "An individualized assessment of the effect of an impairment is particularly necessary when the impairment is one whose symptoms vary widely from person to person." *Id.* at 199. Speaking by way of example, the U.S. Supreme Court stated that it "is contrary to both the letter and the spirit" of the ADA to deem a "diabetic whose illness does not impair his or her daily activities . . . disabled simply because he or she has diabetes." *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 483-84 (1999).

Raycom argues that Robbins is not substantially limited in the major life activity of eating because "her diabetes was not severe and she ate about like the rest of the population eats, both before and after her diagnosis." (Doc. 40 at 4.) Specifically, Robbins ate breakfast, lunch, and dinner and snacked. (*Id.*) She went out to lunch with her coworkers and took dinner breaks.

(*Id.* at 5.) Referring to Robbins' deposition testimony, Raycom points out that Robbins was less "limited" by the diagnosis of diabetes than she was by her previous Weight Watchers diet. (*Id.* at 6.) Further, the kinds of things that Robbins was told to do by her doctor to maintain a healthy lifestyle (healthy foods, moderate portions, and exercise) were the same before and after her diagnosis and are the kinds of things prescribed to the general population for weight control and general good health. (*Id.*)

---

*North Hempstead*, 175 F.3d 144, 151 (2d Cir. 1999); *Lawson v. CSX Transp., Inc.*, 245 F.3d 916, 923 (7th Cir. 2001).

Raycom acknowledges that some courts have found diabetes to substantially limit the major life activity of eating. However, it argues that the plaintiffs in those cases suffered from a diabetic condition that was much more severe than Robbins'. In *Lawson v. CSX Transportation, Inc.*, 245 F.3d 916 (7th Cir. 2001), for example, the plaintiff required three insulin injections daily, his diabetes caused frequent hospitalizations and blackouts, and his life remained at risk regardless of constant monitoring. *Id.* at 918. Similarly, in *Branham v. Snow*, 392 F.3d 896 (7th Cir. 2004), the plaintiff required an insulin pump and suffered trembling and sweating at least once every three weeks. *Id.* at 899. Raycom also distinguishes this case from *Downs v. AOL Time Warner, Inc.*, No. 2:03-CV-1117, 2006 WL 162563 (S.D. Ohio Jan. 20, 2006) in which the court held that there was a genuine issue of material fact as to whether plaintiff, who had Type-II diabetes and who had suffered a diabetic coma necessitating medical leave, was disabled for the purposes of the ADA. *Id.* at *7.

Unlike the plaintiffs in *Lawson* and *Branham*, Robbins is not insulin dependent. And unlike the plaintiff in *Downs*, Robbins has never suffered a diabetic coma. Thus, argues Raycom, this case is more analogous to *Harris v. Challenger Motor Freight, Inc.*, No. 3:98-CV-7288, 1999 WL 1489819 (N.D. Ohio Dec. 10, 1999) and *McPherson v. Fed. Express Corp.*, No. 03-2006B, 2005 WL 3008648 (W.D. Tenn. Nov. 8, 2005). In *Harris*, the court found that the plaintiff's diabetes did not substantially limit a major life activity when there was no evidence that the plaintiff was not able to adhere to a strict schedule of eating meals and taking insulin. *Id.* at *9. Similarly, in *McPherson*, the court found that the plaintiff was not substantially limited in the major life activity of eating when he had pointed to nothing in the record concerning diet restrictions prescribed by his physicians nor offered any evidence to suggest that his ability to eat

10

was substantially limited. *Id.* at *6. The *McPherson* court noted that "[w]hile diabetes affects an individual's dietary needs, the mere diagnosis does not absolve a plaintiff of the obligation to establish a substantial limitation in the activity of eating if he is to survive summary judgment." *Id.*

This Court agrees with the *McPherson* court's analysis and reiterates that Robbins cannot rely upon her diagnosis of diabetes alone to establish a substantial limitation in the activity of eating. However, the Court's application of this rule to the facts of this case do not militate the result that Raycom seeks. Rather, the Court finds that, unlike the plaintiff in *McPherson*, Robbins has presented evidence as to her restrictions on eating. Specifically, Robbins must check her blood sugar level exactly two hours after she begins a meal and must thereafter avoid foods that cause her blood sugar to rise too high. (Robbins Decl. ¶ 8, doc. 34-2.)[6] She must eat three meals a day, at the same time each day, with regular snacks between the meals to maintain a consistent blood sugar level. (*Id.* ¶ 9.) When Robbins' blood sugar drops too low, which has happened once, it causes her to sweat profusely, shake, get a headache, and feel nauseated and anxious; when her blood sugar gets too high, she feels very ill and has to stop what she is doing to give her system time to adjust. (*Id.*) Robbins testified about two occasions, a company Christmas party and a client party, when there was nothing on the menu that she could eat, and explained that "[t]he decisions [she] make[s] on a daily basis will determine whether or not [she]

---

[6] "[A] party cannot create a genuine issue of material fact by submitting an affidavit that contradicts her earlier deposition testimony." *Scott v. Metro. Health Corp.*, 234 Fed. App'x 341, 365 (6th Cir. 2007). However, Robbins' statements in her declaration do not contradict her earlier deposition testimony. Rather, the information serves to supplement Robbins' deposition testimony on the issue of the impact of diabetes on her eating.

11

suffer[s] blindness, kidney failure, liver failure, ha[s] a stroke, ha[s] a heart attack, or ha[s] a leg amputated." (*Id*. ¶ 19.)

Diabetics often suffer nerve damage without knowing it. Thus, Robbins must check her feet each morning to make sure there are no cuts, blusters, calluses, or sores which, if not addressed, might lead to amputations. (*Id*. ¶ 14.) She must pay special attention to her eyes and gums because diabetics have special eye and dental problems. (*Id*. at ¶ 15.) She also must go to the doctor every three months to have her blood glucose level, kidney functions, liver functions, blood pressure, and cholesterol checked. (*Id*.) She must exercise regularly to keep her blood sugar levels under control, and she must take extra precautions when she gets sick with a cold or flu because the medications she might take could affect her blood sugar levels. (*Id*. ¶¶ 11, 16.) These issues involve the activity of eating because the timing and content of Robbins' meals has particularized effects on her body–her feet, eyes, mouth, kidneys, and liver.

 The Court must consider the following factors to determine whether Robbins has demonstrated a genuine issue of material fact as to whether she is "significantly restricted" as to the manner in which she can eat as compared to the average person in the general population: (1) the nature and severity of the impairment; (2) the duration or expected duration of the impairment; and (3) the permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment. 29 C.F.R. § 1630.2(j)(2)(i)-(iii).

The nature of Robbins' impairment to eating is that she cannot eat whatever or whenever she wants without consequence. While it is true that persons in the general population incur consequences as a result of what and when they eat, the difference is in the severity of the consequence. A person in the general population may suffer from any of a myriad of maladies if

he or she eats too much of the wrong foods or too little of the right ones. But there is a clear difference in the nature and severity of the consequences of eating choices to the diabetic. The duration of Robbins' impairment is permanent, and Raycom does not argue otherwise. Finally, the impact of Robbins' impairment is her daily attention to and efforts to mitigate long-term health issues directly related to her diabetes, including damage to her major body systems.

Raycom contends that Robbins' diabetes is not a disability because she eats breakfast, lunch, and dinner and has snacks, all of which she did before her diagnosis, thus the limitation on her eating is not substantial. Further, Raycom contends that Robbins' testimony about what could hypothetically happen if her blood sugar levels were to significantly fluctuate cannot establish a disability under the ADA, citing *Harris,* 2005 WL 3008648, at *9 ("[A] 'disability exists only where an impairment "substantially limits" a major life activity, not where it "might," "could," or "would" be substantially limiting if mitigating measures were not taken.'") (quoting *Sutton v. United Airlines, Inc.*, 527 U.S. 471, 482 (1999)).

The evidence shows that Robbins does, in fact, experience limitations on eating. There are no mitigating measures that she can take that will eliminate the need for her to eat on a regular schedule, test her blood sugar after every meal, eliminate certain foods from her diet if they cause her blood sugar to rise too high, pay particular attention to her feet, eyes, and gums for damage, and exercise regularly. Precedent binding on this Court does not demand that a diabetic show that he or she is insulin-dependent or routinely suffers from hypoglycemic episodes in order to demonstrate a triable issue as to whether his or her major life activity of eating is substantially limited.[7] The Court therefore concludes that genuine issues of material

---

[7] The Sixth Circuit held that a plaintiff who was insulin-dependent and who suffered from unpredictable hypoglycemic episodes but whose "life was pretty normal" had not adduced

fact exist as to whether Robbins is substantially limited in her ability to eat so as to render her disabled for the purposes of the ADA.

### B.    Accommodation

Robbins claims that Raycom failed to accommodate her disability by refusing to explore reasonable accommodations to her job duties, including transferring non-essential job functions to other employees. (Doc. 1 ¶ 17.) Pursuant to EEOC regulations, it may be necessary for the employer "to initiate an informal, interactive process" with the disabled employee to determine the appropriate reasonable accommodation. 29 C.F.R. § 1630.2(o)(3). "This process should identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations." *Id.*

Raycom's motion does not thoroughly address Robbins' allegation that it failed to initiate an interactive process with her, instead stating that the Court need not analyze the claim because Robbins was not actually disabled. (Doc. 40 at 8.)[8] To the extent it addresses the claim, Raycom relies on its position that the "reasonable accommodation" Robbins sought, a forty-five to fifty-hour work week and the ability to eat on a regular schedule, was already available to her, thus Raycom was not obligated to initiate an interactive process to determine an appropriate

---

sufficient evidence to show that her diabetes substantially impaired her ability to think and care for herself. *Salim v. MGM Grand Detroit, L.L.C.*, 106 F. App'x 454 (6th Cir. 2004). However, the plaintiff had not alleged that she was disabled based on the major life activity of eating, thus the court did not consider that issue. Similarly, in *McPherson v. Federal Express Corp.*, 241 F. App'x 277 (6th Cir. 2007), the Sixth Circuit found that an insulin-dependent diabetic had not demonstrated that he was substantially limited in the major life activities of seeing and self-care, but the court did not have the opportunity to examine whether the plaintiff had demonstrated a limitation on eating as he made no mention of that argument on appeal. *Id.* at 282.

    [8] Furthermore, Raycom makes no argument that Robbins' request for accommodation would have created an undue hardship.

14

accommodation.  In short, Raycom argues that because it did not impede Robbins' ability to live a healthy lifestyle, it is entitled to summary judgment.

Raycom's argument ignores the evidence Robbins put forth concerning the practical realities of her job as Traffic Manager.  Robbins testified that although she was not technically forbidden to leave the office at seven o'clock in the evening, she was practically prohibited from so doing because she was "too swamped" with work.  (Robbins Dep. 191-193.)  Raycom does not dispute that Robbins told Tom Long in September 2004 that she had been diagnosed with diabetes and needed to reduce her hours.  Raycom does not dispute that Robbins gave Tom Long a list of her job duties and asked him to review it and see if anything could be passed on to other employees.  Raycom does not dispute that Tom Long told Robbins that he would review this list but never did.  Nor is there any evidence that Tom Long ever discussed with anyone Robbins' request to shift some of her duties to other staff.  Thus, Robbins continued to work long hours because she felt they were required to complete her job.  (*Id*.)

The Sixth Circuit has observed that a request for a reasonable accommodation triggers an employer's "obligation to participate, in good faith, in an 'interactive process' with an employee as to potential reasonable accommodations."  *Smith v. Henderson*, 376 F.3d 529, 536 (6th Cir. 2004) (citing 29 C.F.R. § 1630.02(o)(3); *Brown v. Chase Brass & Copper Co., Inc.*, 14 F. App'x 482, 487 n. 2 (6th Cir. 2001) ("If an employer's unwillingness to engage in such a process leads to a failure to reasonably accommodate an employee, the employer might be liable under the ADA."))  Job restructuring may be a reasonable accommodation.  29 C.F.R. § 1630.2(o)(3).

In this case, Robbins notified Tom Long of her diabetes and expressly requested an accommodation in the form of reduced work hours, asking that certain duties be shifted to other

15

employees. Thereafter, Raycom had a duty to explore potential accommodations, including asking Robbins for clarification if it was unclear as to the nature of her desired accommodation. *EEOC & Keane v. Sears Roebuck & Co.*, 417 F.3d 789, 804 (7th Cir. 2005). There is sufficient evidence before the Court to lead a jury to conclude that Raycom did not engage in an interactive process to explore Robbins' request and, accordingly, may be liable for violating the ADA and Ohio Rev. Code 4112.02(A). Because Robbins has demonstrated that whether she is disabled under the ADA is an issue for trial, and because Raycom has not argued the absence of a fact issue as to the remaining elements of Robbins' disability discrimination claim, Raycom's motion for summary judgment on Count I of the Complaint is denied.

## II.    Retaliation

Robbins claims that Raycom took adverse actions against her following her requests for an accommodation of her disability, constituting retaliation in violation of the ADA and Ohio Rev. Code § 4112.02(I). (Doc. 1 ¶ 21.) Before analyzing the merits of Robbins' retaliation claim, the Court first addresses Raycom's argument that Robbins is barred from pursuing her retaliation claim under the ADA because she did not exhaust her administrative remedies. The Court agrees and holds that it is without subject matter jurisdiction over Robbins' retaliation claim under the ADA.

Under the ADA, a claimant who wishes to bring a lawsuit claiming a violation of the ADA must file a charge of discrimination with the EEOC within 300 days of the alleged discrimination. 42 U.S.C. § 12117(a); 42 U.S.C. § 2000e-5(e)(1). "'An EEOC charge notifies potential defendants of the nature of a plaintiff's claims and provides the opportunity for the parties to settle claims before the EEOC instead of litigate them.'" *Sain v. American Red Cross*,

16

233 F. Supp. 2d 923, 929-30 (S.D. Ohio 2002) (quoting *NAACP v. City of Parma, Ohio*, 263 F.3d 513, 534 (6th Cir. 2001)).  "If a claimant does not first present a claim to the EEOC, that claim may not be brought before federal courts."  *Id.* (citing *Ang v. Procter & Gamble Co.*, 932 F.2d 540, 545 (6th Cir.1991).  "The judicial complaint must be limited 'to the scope of the EEOC investigation reasonably expected to grow out of the charge of discrimination.'"  *Id.* (quoting *EEOC v. Bailey Co., Inc.*, 563 F.2d 439 (6th Cir. 1977)).

In this case, Robbins filed a charge with the EEOC on September 26, 2005 alleging discrimination on the basis of disability.  (Robbins Dep. 76-77, Ex. 8.)  She did not check the box on the form marked "retaliation."  Raycom argues that this omission is fatal to Robbins' claim of retaliation under the ADA.  Typically, the failure to check the appropriate box on an EEOC charge will deprive a court of jurisdiction to hear a claim.  However, "where facts related with respect to the charged claim would prompt the EEOC to investigate a different, uncharged claim, the plaintiff is not precluded from bringing suit on that claim."  *Davis v. Sodexho, Cumberland College Cafeteria,* 157 F.3d 460, 463 (6th Cir. 1998); *see also Duggins v. Steak 'N Shake, Inc.*, 195 F.3d 828, 832 (6th Cir. 1999) (holding that the plaintiff's failure to mark the appropriate box on the EEOC form was not fatal to her retaliation claim where plaintiff related facts to the EEOC which would have prompted an investigation into retaliation).

Robbins asserts that she set forth the facts giving rise to her retaliation claim in the charge and thus satisfied her obligation to present a charge of retaliation to the EEOC.  The Court disagrees.  As Robbins explained in her opposition to Raycom's motion for summary judgment, her claim of retaliation is directed at the defendant's conduct *in addition to* its failure to accommodate her disability, namely, Tom Long's giving her more work and an "impossible

17

deadline." (Doc. 34 at 19.)  Robbins' EEOC charge stated only that WXIX refused her request

for an accommodation in the form of a modified work schedule.  (Robbins Dep. Ex. 8.)  The

charge makes no mention of any "additional" or retaliatory conduct on the part of Raycom.

Thus, nothing in the charge would have prompted the EEOC to investigate a claim of retaliation

or put Raycom on notice of her intent to pursue any such claim in federal court.  Because

Robbins did not exhaust her administrative remedies with respect to her charge of retaliation

under the ADA, the Court lacks jurisdiction to consider the claim.

However, Raycom does not argue that Robbins' failure to check the "retaliation" box on

her EEOC charge is fatal to her retaliation claim under Ohio law.  There is no requirement in the

Ohio Administrative Code that a plaintiff first file a claim with the Ohio Civil Rights

Commission prior to asserting a civil claim.  While Ohio Rev. Code § 4112.05 permits a person

to file a charge of an unlawful discriminatory practice described in § 4112.02(I), such a filing is

permissive.  Accordingly, Robbins is entitled to pursue her state law claim of unlawful

retaliation, over which this Court has supplemental jurisdiction.

Moving now to the merits of Robbins' retaliation claim, Raycom first argues that

Robbins' retaliation claim is nothing more than a restatement of her failure to accommodate

claim and that an employer's failure to accommodate a disability does not amount to retaliation.

(Doc. 40 at 13, citing, inter alia, *Parker v. Noble Roman's, Inc.*, No. IP-96-0065-C-D/F, 1997

WL 839138, at *8 (S.D. Ind. Dec. 10, 1997) in which the court held that where the alleged

adverse employment action is the same as the action constituting the failure to accommodate,

plaintiff cannot maintain a retaliation claim).  As explained above, Robbins alleges that Raycom

engaged in retaliatory acts in addition to failing to accommodate her disability, namely, giving

18

her even more work. Therefore, her claim of retaliation is not simply a recasting of the failure to accommodate claim. Furthermore, the Sixth Circuit has held that, under certain circumstances, an employer's refusal to provide a reasonable accommodation may convert an employee's resignation into a constructive discharge. *Smith v. Henderson*, 376 F.3d 529, 534 (6th Cir. 2004). Thus, it is permissible for the Court to consider Raycom's alleged failure to accommodate Robbins as a component of her retaliation claim.

Next, Raycom argues that Robbins cannot establish the required elements for a prima facie case of retaliation because it did not take any employment action adverse to her. To prove a claim for retaliation, a plaintiff must demonstrate (1) that she engaged in protected activity; (2) that the exercise of her civil rights was known by the defendant; (3) that defendant thereafter took adverse employment action; and (4) that a causal connection exists between the protected activity and the adverse employment action. *Walborn v. Erie County Care Facility*, 150 F.3d 584, 588-89 (6th Cir. 1998). "The burden of establishing a prima facie case in a retaliation action is not onerous, but one easily met." *Nguyen v. City of Cleveland*, 229 F.3d 559, 663 (6th Cir. 2000).

With respect to the first element, "[a]lthough the Sixth Circuit has never considered the issue, other courts have held that 'requesting reasonable accommodations is protected activity for purposes of an ADA retaliation claim.' *Garcia v. Third Fed. S & L Ass'n of Cleveland*, No. l:06-cv-1990, 2007 WL 1235820, 2007 U.S. Dist. LEXIS 30887, at *16 (N.D. Ohio April 26, 2007) (collecting cases from '[a]t least six other circuits' holding that a request for a reasonable accommodation is a protected activity for purposes of an ADA claim)." *Peck v. Oakland County*, No. 07-10167, 2008 WL 450471 at *10 (E.D. Mich. Feb. 15, 2008). A request for a

19

modified work schedule is a request for an accommodation. 42 U.S.C. § 12111(9)(B). Thus, Robbins engaged in a protected activity when she asked Tom Long to reduce her hours and shift job responsibilities to other employees.

With respect to the second element, there is no dispute that Tom Long and John Long both knew of Robbins' request for an accommodation.

It is with respect to the third element, adverse employment action, that Raycom lodges its most vehement argument. Robbins seeks to establish an adverse action by showing that she was constructively discharged from Raycom. Raycom counters that Robbins' voluntary resignation does not constitute constructive discharge as a matter of law because Robbins has not demonstrated that her "working conditions [were] . . . so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." *Hammon v. DHL Airways, Inc.*, 165 F.3d 441, 450 n.10 (6th Cir. 1999) (quoting *Easter v. Jeep Corp.*, 750 F.2d 520, 522-23 (6th Cir. 1984)).

To demonstrate a constructive discharge, Robbins must adduce evidence to show that (1) Raycom deliberately created intolerable working conditions, as perceived by a reasonable person and, (2) did so with the intention of forcing her to quit. *Moore v. KUKA Welding Sys.*, 171 F.3d 1073, 1080 (6th Cir. 1999). "To determine if there is a constructive discharge, both the employer's intent and the employee's objective feelings must be examined." *Id*. (citing *Held v. Gulf Oil Co.*, 684 F.2d 427, 432 (6th Cir. 1982)).

Robbins' constructive discharge claim relies on Raycom's alleged failure to accommodate her disability and Tom Long's act of giving her even more work when she had told him she needed her work hours reduced. While assigning additional job duties to an

20

employee is normally insufficient to establish a constructive discharge as a matter of law, the Sixth Circuit has held that when assignment of additional job duties coincides with a failure to reasonably accommodate a disability, an employee's resignation may be converted into constructive discharge. *Smith*, 376 F.3d at 534. In *Smith*, the plaintiff's employer was well aware of the plaintiff's disability and her need for a medical restriction on her hours of work yet it denied the plaintiff a form of accommodation that would have reduced her work hours. The Sixth Circuit concluded that "[a]ssuming that Smith was denied a reasonable accommodation that forced her to work well in excess of her medical restrictions, a jury reasonably could infer that the [employer] knew that Smith's working conditions would become intolerable to a reasonable person suffering from her particular disability." *Id*. at 537.

Robbins repeatedly told Tom Long that she needed to reduce her work hours because of her diabetes. She asked him to review her list of duties and discuss with her what jobs could be shifted to other employees. Tom Long did not shift duties away from Robbins but rather gave her a "to do" list to complete on a short deadline. The Court finds that a reasonable jury could conclude that Raycom, through Tom Long, knowingly ignored Robbins' repeated requests for an accommodation and could foresee that Robbins would be compelled to quit her job in order to preserve her health. Thus, a genuine issue of fact exists as to whether Robbins was constructively discharged from her employment with Raycom.

Finally, as to the final element of the prima facie case of retaliation, a reasonable jury could conclude that there was a causal connection between Robbins' request for an accommodation and the adverse action of the constructive discharge. Accordingly, Raycom's motion for summary judgment as to Robbins' claim of retaliation under Ohio law is denied.

21

**CONCLUSION**

For the foregoing reasons, Defendant's Motion for Summary Judgment (doc. 25) is

DENIED as to Count I (disability discrimination), GRANTED as to the federal statutory claim

within Count II (retaliation), and DENIED as to the Ohio statutory claim within Count II.

IT IS SO ORDERED.

           <u>  s/Susan J. Dlott    </u>
           Susan J. Dlott
           United States District Judge